THOMAS E. COUGHLIN, by His Next Friend, Francis
Edward Coughlin, *vs.* FREDERICK H. BLAUL,
Trading as F. A. Blaul Sons.

*Issues and Pleadings*: *burden on defendant.  Master and serv-
ant*: *assumption of risk; concealed dangers; negligence;
not connected with injury; minors; carelessness
of third party.*

A defendant has the right to have the jury confined to the
issues made by the pleadings.                                    p. 30

The burden is upon the plaintiff to offer legally sufficient evi-
dence to prove the allegations of the declaration which con-
stitute the ground of action, and, if he fails, he is not entitled
to recover.                                                      p. 30

To order an employee, a minor (without previous experience),
to clean a meat-chopping machine, which could be set in
motion by a button on the machine—without warning him
with reference to it—is negligence, and for injury, the result
of such negligence, the employer would be responsible.   p. 33

The principle, that the servant assumes the risk of all open
and obvious perils incident to the service he undertakes, does
not apply where the servant, by reason of tender years, is
unable to appreciate or understand those perils from his own
observation.                                                     p. 33

To entitle a plaintiff, in an action of negligence, to recover he
must show, not only that he sustained an injury, but that
the defendant has been guilty of some negligence which pro-
duced the particular injury.                                     p. 35

The negligence alleged and the injury sued for must bear the
relation of cause and effect.  The concurrence of both and
the *nexus* between them must exist to constitute a cause of
action.                                                          p. 35

Where an employee, a minor, was injured by a machine he
was ordered by the employer to clean, and the injury was
caused, not by the negligence of the employer, but by the
carelessness of another employee, who volunteered to help,

and who thoughtlessly set the machinery in motion, it was *held,* that the employer was not liable. p. 35

In this case it was primary negligence to subject the child, without warning or instruction as to the risk of injury from the inadvertent or careless turning on of the current; and it was concurrent negligence of another immature servant of the defendant that produced the result by which the plaintiff was wrongfully injured; both causes of action were set in motion by the defendant, and whether or not they constituted negligence for which the defendant was responsible, should be left to the jury, and should not have been withdrawn from their consideration (per URNER, J.). p. 39

*Decided February 15th, 1913.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Walter E. Capper* (with whom was *J. Philip Roman* on the brief), for the appellant.

*George A. Pearre* and *J. W. S. Cochrane,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is a suit brought by a servant against his master to recover damages for personal injuries alleged to have been caused by the master's negligence.

At the time the plaintiff was injured he was about eleven years old, and the injuries sustained were painful and permanent—the fingers of one hand being cut or torn off. At the close of the plaintiff's case, the Court directed a verdict for the defendant by instructing the jury that the plaintiff

had offered no legally sufficient evidence under the pleadings
of the negligence of the defendant as the proximate cause of
the plaintiff's injury. The plaintiff excepted to this instruc-
tion, and from the judgment for the defendant he has prose-
cuted this appeal.

As the prayer refers to the pleadings and challenges the
right of the plaintiff to recover·thereunder the allegation of
the declaration must be examined. It is the settled law
that a defendant has the right to have the jury confined to
the issues made by the pleadings. *City Passenger Railway
Company* v. *Nugent,* 86 Md. 360; *Fletcher* v. *Dixon,* 107
Md. 420. The burden is upon the defendant to offer legally
sufficient evidence to prove the allegations of the declaration
which constitute the ground of action, and if he fails to do
this he is not entitled to recover. When the evidence offered
in the case is legally insufficient to fix a liability upon the
defendant under the pleadings, it is the duty of the Court,
when applied to by an appropriate prayer, to instruct the
jury to find their verdict for the defendant.

The declaration in this case contains a single count. It
alleged ·that the defendant, Frederick H. Blaul, trading as
F. A. Blaul Sons, was the owner and proprietor of a cer-
tain meat shop located in Cumberland, Maryland, in which
shop he carried on the business of cutting up and grinding
meat for sale at retail, and that for the purpose of choping
and grinding up meats into sausage and otherwise, the
defendant installed a machine in said shop, which machine
was fastened to the wall and on the top of a table, so that
the meat after being chopped up was pushed out of the bot-
tom of the machine into a receptacle below; that said machine
had a funnel arrangement on top into which the meat was
placed for grinding, and contained revolving knives or sharp
coils to grind up the meat; that the machine was run by a
powerful electric current, turned on and off by means of an
exposed push button attached to the wall above the machine
and four or five feet from the floor. It further alleged that

in August, 1911, the plaintiff was employed by the defend-
ant to carry bundles and packages of meat, without the
knowledge or consent of his parents, and that on the 15th
of August, 1911, he and a certain Earl Warner (a boy about
thirteen years of age employed then and there by the defend-
ant), *"were negligently and wrongfully put to work by the
defendant at cleaning said meat chopping machine, which
machine was highly dangerous* to persons of the youth and
inexperience of plaintiff and the said Earl Warner, and that
as a proximate consequence of said wrong and negligence,
the plaintiff, while so cleaning said machine and using due
and proper care and caution on his part, was seriously
injured by his right hand becoming caught in the revolving
knives or coils of said machine, and being mangled and torn
off." The declaration further alleged that both he and
the said Earl Warner, by reason of their age, lack of judg-
ment and discretion, were utterly ignorant of the dangers
encountered in cleaning and working about the machine, and
were ignorant of the workings and power of the same, and
that neither of them were ever instructed as to the dangers
of the machine or how to safely clean it, or as to the danger
of taking out and cleaning the knives or coils or how to prop-
erly perform that work; that the room in which they were
set to work on the machine was a dangerous and unsafe place
in which to work, and that the machine and equipment were
unsuitable, dangerous and unsafe for a person of the age, lack
of discretion and inexperience of the plaintiff and the said
Warner to work with; that Earl Warner was, by reason of
his youth and inexperience, incompetent, to the knowledge
of the defendant, and was employed by the defendant in vio-
lation of the Child Labor Law of Maryland. (Acts 1912,
Ch. 731.) The declaration then alleged that the injury sus-
tained by the plaintiff "was directly caused by the negligence
of the defendant in so placing him and said Earl Warner at
work in cleaning said dangerous and unsafe machine, with-
out being instructed by the defendant, his agents and servants

how to clean the same, and how to avoid the dangers incident to boys of their youth, lack of discretion and inexperience; and to the negligence of the defendant in so placing the plaintiff in a dangerous and unsafe place in which to work, and in putting him to work on a machine which was unsuitable and dangerous to one of his age, lack of caution and discretion, and the defendant was further negligent in setting the plaintiff to work at said machine with said Earl Warner because of the youth, inexperience and incompetency of the said Earl Warner, etc."

The proof shows that the plaintiff was employed by the defendant, and that a Mr. Woolford, who had charge of the shop for the defendant, gave him orders as to his work. This shop consisted of two rooms,—a store room and a small back room which was poorly lighted. In this back room was a funnel shaped meat grinder operated by electricity. There were coils of knives inside the grinder, and when the electricity was applied these knives revolved with great rapidity. The knives at times became choked or clogged with ground meat and it became necessary to clean them. In order to clean them it was necessary to take out the coil of knives.

The duty of the plaintiff was to carry packages and sometimes to clean the machine. He had cleaned the machine once prior to the accident. On the day he was injured he was directed by Mr. Woolford to clean the machine; but was not told anything about the machine or warned of its danger. Electricity by which the machine was set in motion was applied by two buttons,—one on the wall of the room near the machine and about five feet from the floor, and one on the machine itself. By means of these buttons the electric current was turned into the motor, and the grinder set in operation.

The evidence tends to show that the electric current was turned on at the button on the wall at the time the plaintiff was put to cleaning the machine, and to start the revolution of the knives it was only necessary to turn the button at-

tached to the machine. The evidence further tends to show that neither the plaintiff, nor Earl Warner, nor Bud Naylor, a colored boy who was in the room at the time, touched the button on the wall.

As a result of all the evidence we are of opinion that the plaintiff was ordered to do a work in the performance of which he was exposed to dangers and risks of injury which by reason of his youth and inexperience he did not full understand or appreciate, and that under the circumstances it was the duty of his master to have warned him of the danger, and to have given him proper instructions. This the master failed or omitted to do, and this breach of duty on the part of the defendant constituted negligence on his part. The plaintiff, of course, knew that he would be hurt if he put his hand in the machine when the current was on. He knew the electricity was applied by means of the buttons, but he did not know which button must be turned in order to start the machine. To place a child of such tender years, without warning or instructions in a situation so exposed to dangers, which he did not fully appreciate, was a clear act of negligence, and if the evidence showed that the injury was the result of *that* negligence the defendant would be clearly responsible. The liability of a master for injuries resulting to children of tender years from such a failure of duty is well settled. "Ordinarily," said JUDGE MCSHERRY in *Levy* v. *Clark,* 90 Md. 146, "it may be laid down as the general rule that the servant assumes the risk of all open, obvious and apparent perils incident to the service he undertakes. This rule is qualified when the servant, by reason of tender years, is unable to appreciate or understand those perils from his own observation. In such instances it becomes the duty of the master to warn the servant of the existence of the dangers, which, though visible to others, are not evident to one of immature years and are not evident to him because of his want of capacity, growing out of that immaturity, to appreciate or comprehend them. A duty to warn

a child of the dangers incident to a hazardous employment does not arise when the child, though young and inexperienced, actually knows the peril." *Chambers* v. *Woodbury Manufacturing Co.,* 106 Md. 496.

But there is evidence in this case which exempts the defendant from *legal* liability which would otherwise attach to him under the principles stated.

. The record shows that the injury inflicted upon the plaintiff was directly caused by the act of Earl Warner. This boy was in the employ of the defendant at his meat shop, and his duty was, to use his own language "to clean up things and carry meat out." He was in the small room where the grinder was located when the plaintiff was injured. It was not a part of his duty to take the machine apart to clean it, and he had no instructions to take it apart. On the contrary, he had been instructed by Mr. Woolford, who was in charge of the business for the defendant, not to take it apart. There is no evidence in the case to support the allegations in the declaration that the plaintiff and Earl Warner were put "to work by the defendant at cleaning said meat chopping machine." The evidence, on the contrary, shows that at the time of the injury Earl Warner had no duty or instructions with respect to the machine, and that his thoughtless and heedless, but well meaning act, was purely voluntary on his part,—done not in the line of his duty as the servant of the defendant. His motive was good. But unfortunately resulted in a painful and distressing injury to his companion whom he kindly volunteered to assist.

The circumstances under which the plaintiff was injured will now be stated.

To clean the machine it was necessary to take out the grinder of knives. The plaintiff was in the act of doing this when he was hurt. The current was off at the time. The grinder was taken out at the end of the machine, and the plaintiff had some difficulty in moving it, and he put his hand in the funnel or hopper to loosen it and to push it out at the end. Earl Warner was lying on a board in the room,

and seeing the difficulty the plaintiff was having, said he would help him.   He went back of the plaintiff, who had his right hand in the funnel, and turned on the electricity by means of the button on the machine.   This started the revolution of the knives, and the plaintiff's fingers were cut off.

Earl Warner testified that he told the plaintiff he intended to turn on the current; but the plaintiff said he did not so inform him, and that he thought Warner intended to help him push the grinder out through the end of the machine.

It is a perfectly well settled principle that to entitle the plaintiff to recover in an action of this kind he must show not only that he has sustained an injury, but that the defendant has been guilty of some negligence which produced that particular injury. . The negligence alleged and the injury sued for must bear the relation of cause and effect.   The concurrence of both and the *nexus* between them must exist between them to constitute a cause of action.   As an injury may occur from causes other than the negligence of the party sued, it is obvious that before a liability on account of that injury can be fastened upon a particular individual it must be shown, or there must be evidence tending to show, that he is responsible for it; that is, that he has been guilty of the negligence that produced, or occasioned that injury.   *Benedick* v. *Potts,* 88 Md. 52.

Assuming the defendant to have been guilty of negligence in placing the plaintiff to work upon the machine under the circumstances stated, it can hardly be contended that *that* negligence was the direct cause of the injury.   The injury to the plaintiff was the direct result of the negligent act of Earl Warner, who was not put to work upon the machine and who had no duty with respect to it at the time.   The act of Earl Warner which directly caused the injury was an independent cause for which the master under the facts cannot be held responsible.

Being of opinion that the Court below committed no error in granting the prayer which directed a verdict for the defendant, the judgment will be affirmed.

*Judgment affirmed, with costs.*

URNER, J., delivered the following dissenting opinion.

I fully concur in the conclusion of the Court that the evidence is legally sufficient to show negligence on the part of the defendant in putting the eleven year old plaintiff to work on the machine in question without instructing him as to the danger to which he was thus exposed; but I am unable to agree to the view expressed in the opinion with respect to the exemption of the defendant from liability for the injury sustained by the plaintiff in the course of the work upon which he was employed. In view of the principle applied in *Pennsylvania Steel Co.* v. *Wilkinson,* 107 Md. 574, and other cases I think it should have been left to the jury to determine upon the evidence whether the negligence of the other child-servant of the defendant was an *independent* or merely a concurrent cause of the injury. In the case cited the defendant negligently allowed a rope used in construction work to hang down across a street, and the plaintiff's horse became frightened and ran away, not because the rope itself prevented a safe passage, but because an unidentified person pulled the rope and caused it to swing towards the horse as it approached. It was contended that this act of negligence was entirely independent of that committed by the defendant company and that it was consequently exempt from liability in the absence of proof that the rope was pulled towards the horse by a servant of the defendant acting within the scope of his employment. This contention was overruled. It was held that the defendant was "chargeable with the negligence of the person who moved the rope, whether he was in its employ or not," and that his act must be imputed to the defendant company "as it was at most an intervening cause, and not a sufficient and independent cause by which the defendant would be relieved from responsibility." The case was held to be within the rule stated by Addison in his work on *Torts,* 3rd Ed., page 5, and quoted with approval by JUDGE ALVEY in *Baltimore City Passenger Railway Company* v. *Kemp,* 61 Md. 81, "that whosoever does an illegal act is answerable for all the consequences that ensue in the

ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided that the intervening against were *set in motion* by the primary wrongdoer, or provided their acts causing the damage were the necessary or legal or natural consequence of the original wrongful act." The movement of the rope, under the circumstances was held to have been "plainly induced by the wrongful act of the defendant in permitting it to hang over the highway in the position described," and upon the principle stated the defendant was declared to be liable to the plaintiff for the injury "sustained in consequence of the negligent handling or movement of the rope." It was said that "the question of remote and proximate cause is often perplexing and embarrassing, and at times very difficult to determine," but "the true rule is that what is proximate cause of an injury is ordinarily a question for the jury."

In *District of Columbia* v. *Dempsey,* 13 Appeal Cases, 533, cited in the opinion in *Penn. Steel Co.* v. *Wilkinson,* and said to be identical with it in principle, a broken telephone wire was negligently left suspended from a tree over the street. Within a few minutes before the accident a stranger fastened the wire to a tree in such manner as to form a loop, and in this the plaintiff was caught and injured. The stranger's intervention was held to have been a further and concurrent cause of the injury and not an independent cause which would relieve the defendant.

This Court said in *Maryland Steel Co.* v. *Marney,* 88 Md. 495 and in *Baltimore and Potomac R. R. Co.* v. *Reaney,* 42 Md. 136, that "the law is a practical science, and Courts do not indulge in refinements and subtleties, as to causation, that would defeat the claims of natural justice. They rather adopt the practical rule, that the efficient and predominating cause, in producing a given event or effect, though there may be subordinate and dependent causes in operation, must be looked to in determining the rights and liabilities of the par-

ties concerned." It was further said that "no wrongdoer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense, that there was a more immediate cause of the loss, if that cause was put into operation by his own wrongful act." To entitle him to exemption, he must show not only that the same loss *might* have happened, but that it *must* have happened, if the act complained of had not been done."

In *Chambers* v. *Woodbury Mfg. Co.,* 106 Md. 496, there were five young girls employed to "doff" bobbins in the defendant's factory, and they were required at certain intervals in their work to wait for short periods on a platform outside the building. The platform was protected by a railing composed of two horizontal pipes, with a space of seventeen inches between the lower one and the floor of the platform. There were no seats on the platform, and while one of the girls, eleven years old, was seated on the floor near the outer edge, in the way customarily adopted, another girl came across the platform to slap her in play, and in moving her body to avoid the slap the first-mentioned child passed through the space between the lower rail and the floor, and falling to the ground was seriously injured. The Court held that the evidence was legally sufficient to require the submission of the case to the jury.

It was held in *Sheridan* v. *Brooklyn & N. R. Co.,* 36 N. Y. 41, that the negligence of a third person in pushing a boy from the platform of a car did not exempt the railway company from liability for the resulting injury where it negligently required him to stay on the platform; and in *Carterville* v. *Cook,* 129 Ill. 152, it was held that a boy who was negligently shoved by another boy from an unguarded sidewalk, elevated about six feet above the ground, had a right of action against the municipal corporation by which the sidewalk was maintained.

In *Morris* v. *Stanfield,* 81 Ill. App. 264, it was declared that "If it was negligence to put a boy under thirteen years of age at work in a factory within a few inches of an unprotected buzz saw, any act of a fellow-servant, not wilfully intended to injure appellee, that brought him in contact with the saw, was a concurrent act of negligence."

In the present case the primary negligence consisted in subjecting this little boy, without warning or instruction, to the risk of injury from the inadvertent or careless switching on of the electric current while the machine was being cleaned; and the concurrent negligence was the act of another immature servant of the defendant in producing the very result to the hazard of which the plaintiff was wrongfully exposed. The evidence tends to show that both the causes which thus contributed to the accident were "set in motion" by the defendant. He was responsible for the presence of both children at the place of danger, and the proof is that both had the same general duties under their employment. The testimony of Earl Warner, the thirteen year old boy, was to the effect that he "most always cleaned the machine." They were in the dimly lighted room together when the plaintiff started to clean the meat grinder, and as he had some difficulty in detaching the coil of knives from the cylinder, Earl, not seeing in the imperfect light that the plaintiff's hand was far enough down in the hopper to be caught, undertook to loosen the coil by turning on the current. The evidence is that it was necessary to take the machine apart in order to clean it, and while Earl states that he had been told not to take it apart for that purpose, yet, as he had been cleaning it "most always" as part of his duties, and as his younger associate was actually put to work at a process which could only be accomplished by removing the knives, it was a question for the jury as to whether the older boy was acting in the natural course of his duty when he made his unfortunate attempt to give assistance in the work. If he had been of sufficient age and discretion, he would not

have turned on the current without exercising more care to avoid injury to his companion. If the room had not been poorly lighted, the plaintiff's peril could have been more readily observed. If the plaintiff had been told that the button on the machine was the only check at that time upon the current, he might have been on his guard against the danger when the other boy approached the machine to assist. If the switch on the wall had been turned off, as it should have been, while the plaintiff was cleaning the grinder, the accident would probably not have occurred. The causes and conditions which produced the plaintiff's injury were thus clearly co-operative and interdependent, and each was attributable, upon the evidence, to the defendant's negligence. In my view of the case it is particularly appropriate for the application of the principle of the decisions above cited, and should not have been withdrawn from the jury. If the declaration does not correctly describe the negligence which the proof discloses, I think the plaintiff should be given an opportunity to amend and should not be denied recovery by a conclusive judgment on this appeal.